Jay T. Tedesco,                          :
                    Petitioner           :
                                         :
        v.                               :
                                         :
Kane Freight Lines, Inc. (Workers'       :
Compensation Appeal Board),              :    No. 1270 C.D. 2021
                    Respondent           :    Submitted: January 27, 2023


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                   FILED:  May 19, 2023


        Jay T. Tedesco (Claimant) petitions for review of the October 21, 2021,
decision and order of the Workers' Compensation Appeal Board (Board), which
affirmed with modification a November 4, 2020, decision and order of the Workers'
Compensation Judge (WCJ).  The WCJ granted a modification petition filed by Kane
Freight Lines, Inc. (Employer), based on a July 11, 2019, Impairment Rating
Evaluation (IRE).  Upon review, we affirm.


                    **I.  Factual & Procedural Background**

        On March 31, 2015, Claimant sustained a disabling work-related injury
while operating a broken pallet jack.  Reproduced Record (R.R.) at 40a & 52a.
Employer accepted the injury as a "lower back strain" and began paying temporary

total disability (TTD) benefits of $951.00 per week. *Id.* The parties later stipulated to expand the description of injury to "bilateral pulmonary embolism and bilateral [deep venous thrombosis] as a result of the immobility of the work injury." *Id.* After litigation of a review petition, the WCJ issued a January 4, 2018, decision further adding "L4-5 disc herniation, resolved to a disc disruption with chronic right L4 radiculopathy" to the description of injury. *Id.* at 46a.

On September 27, 2019, Employer filed a modification petition seeking to modify Claimant's benefits to temporary partial disability (TPD) status based on a July 11, 2019, IRE based on the 6th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides); the IRE returned a 32% impairment rating. R.R. at 8a. This was below the 35% threshold for retention of TTD status as dictated in Section 306(a.3)(2) of the Workers' Compensation Act (Act),[1] which became effective roughly 10 months before the July 2019 IRE. *Id.*

Employer presented the deposition of Dr. Kenneth Gentilezza, M.D., who conducted the July 2019 IRE. R.R. at 47a. At the IRE, Claimant reported 8/10 pain in his lumbar area radiating with radicular symptoms down his right leg and more recently in his left leg. *Id.* at 53a. Claimant reported ongoing difficulty with all activities of daily living and completed a pain disability questionnaire (PDQ).[2] *Id.* A January 2017 electromyography (EMG) test showed right-side radiculopathy

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. Section 306(a.3)(2) was added to the Act by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. § 511.3(2).

[2] The PDQ was described by Claimant's medical witness, Dr. Jacob, as a paper evaluation where the patient fills out 15 questions concerning their condition on a 1/10 scale; the doctor then adds up the total and includes it in the impairment rating pursuant to the Guides' formula. Reproduced Record (R.R.) at 110a.

at L4 and magnetic resonance imaging (MRI) studies showed abnormalities with stenosis at L3-4 and L4-5. *Id*. at 54a.

Dr. Gentilezza noted that according to records, Claimant reported left leg issues in April 2017, but these were not diagnostically documented and were not included in the WCJ's description of injury. R.R. at 55a-56a. Dr. Gentilezza omitted left leg symptoms in his IRE calculations because he did not find them to be consistent with or causally related to Claimant's 2015 injury. *Id*. at 57a. He explained that in the IRE context, symptoms in another body part can be valid but not necessarily contribute to or enhance impairment. *Id*. at 61a. Using a combined values chart to determine a final figure based on his raw evaluation scores, Dr. Gentilezza arrived at an overall impairment rating of 32%, which he believed was accurate. *Id*. at 60a.

Dr. Gentilezza explained his methodology for Claimant's lumbar conditions. R.R. at 58a-59a. Pursuant to the AMA Guides and based on Claimant's diagnosis, his lumbar issues were within the "Class 3" range of 15-23% impairment; the evaluation begins in the middle at a default of 19% and then is adjusted using modifying factors based on the PDQ, the clinical exam, and medical records including available clinical studies. *Id*. at 58a. Claimant's PDQ score was 119, which Dr. Gentilezza described as a Grade 3 modifier indicating pain and symptoms with less than normal activity. *Id*. His clinical examination, which resulted in findings of diminished light touch sensation and 3/5 strength, resulted in a Grade 2 modifier. *Id*. Evaluation of Claimant's medical records, including his diagnostic tests, led to a Grade 3 modifier. *Id*. Using these results, Dr. Gentilezza calculated that Claimant's lumbar impairment rating was two negative units off of the 19% default, resulting in a 15% rating (the numbers are "odd," meaning that his

3

calculations took the rating from 19% to 17% to 15%). *Id*. at 58a-59a. Relevant to this appeal, Dr. Gentilezza stated that he did not use Table 17-5 from the AMA Guides in Claimant's IRE; he described it as an "overview" and an "overall guide" to IREs that is part of the AMA Guides, but is "not part of the formula" used to actually calculate ratings. *Id*. at 63a.

Dr. Gentilezza acknowledged the differences between his lumbar calculations and those of Dr. Jacob, who conducted a rebuttal IRE at Claimant's request and in which Dr. Jacob calculated 21% lumbar impairment based on one positive unit that raised his default from 19% to 21%. R.R. at 59a-60a & 64a. Dr. Gentilezza noted that Dr. Jacob's figures were generally higher and that he did not see objective evidence in Dr. Jacob's notes to support some of his results. *Id*. at 64a. Dr. Gentilezza's physical examination resulted in a Grade 2 modifier, less severe than Dr. Jacob's Grade 3 modifier, because he detected less decreased sensation than Dr. Jacob. *Id*. at 59a. Dr. Gentilezza explained that in terms of evaluating medical records for the third modifier category, he had not used Claimant's EMG because it had already been used in confirming Claimant's diagnosis, but he used Claimant's MRI because he felt it was relevant. *Id*. Dr. Gentilezza noted that if he had used the PDQ Claimant completed for Dr. Jacobs, which resulted in a score of 132 (Claimant's PDQ for Dr. Gentilezza was 119), it would only have increased his overall result from 32% to 33%, still under the 35% threshold for retention of TTD status. R.R. at 59a-60a.

Claimant presented the deposition of Dr. Emmanuel E. Jacob, M.D. R.R. at 100a. At Claimant's request, Dr. Jacob conducted an IRE of Claimant on November 19, 2019, about four months after Employer's IRE. *Id*. Like Dr. Gentilezza, Dr. Jacob placed Claimant in Class 3 with a range of 15% to 23%

impairment. *Id*. at 112a & 115a-17a. Claimant presented with 8/10 pain levels and his PDQ resulted in a score of 132, which is within the Grade 4 modifier, more severe than Dr. Gentilezza's Grade 3 modifier based on Claimant's PDQ score of 119 at the previous IRE. R.R. at 107a & 138a. Dr. Jacob's lumbar exam resulted in a Grade 3 modifier compared with Dr. Gentilezza's Grade 2 modifier. *Id*. at 107a-08a & 179a.

Dr. Jacob also reviewed Claimant's medical records, including a September 2015 MRI and EMGs from October 2015 and July 2017, both of which indicated right L4 lumbar radiculopathy. *Id*. at 111a. However, Dr. Jacob believed the Grade 2 modifier Dr. Gentilezza used for this category, which reduced Claimant's impairment rating from the default of 19% to 15%, was incorrect because it utilized studies that had already been used in determining Claimant's diagnosis. *Id*. at 121a-22a. Dr. Jacob stated that evaluators are not supposed to "double-dip" and count contributory factors twice in an evaluation. *Id*. at 149a-56a. Dr. Jacob therefore used no modifier at all for the records category. *Id*. at 179a. At his deposition, however, Dr. Jacob was unable to pinpoint that directive in the AMA Guides. *Id*. at 156a-57a. He acknowledged he had not seen a pre-injury MRI from 2006 showing findings at both L3-4 and L4-5. R.R. at 129a-30a.[3]

Dr. Jacob noted that, in contrast to Dr. Gentilezza's use of a "negative" Grade 2 modifier for the exam category, he used a Grade 3 modifier, which indicated more severe impairment and resulted in a "plus 1 adjustment" that raised the default 19% lumbar impairment rating to 21%. *Id*. at 123a & 144a-45a. Dr. Jacob opined, however, that the AMA Guides are not "perfect science" and that some interpretation

---

[3] The 2006 MRI is discussed in the previous WCJ decision from 2018 that adjudicated Claimant's description of injury and, as will be discussed, arose in the WCJ's credibility determination of Dr. Jacob. *See* R.R. at 43a.

by the IRE doctor is needed. *Id*. at 145a & 157a. Relevant to this appeal, Dr. Jacob explained that Table 17-5 is just a summary and is not used in calculations, which measure the results of the doctor's functional history evaluation, physical exam, and clinical exam. R.R. at 140a.

Dr. Jacob included Claimant's left leg issues in his exam category calculations even though the formal description of injury does not include any left leg conditions and they were not detected in Claimant's EMG. *Id*. at 132a-35a. Dr. Jacob explained that Claimant reported left leg issues in 2017 and at the IRE, that he detected them on exam, and that he attributed them to the work injury, unlike Dr. Gentilezza. *Id*. at 132a-35a. Using the combined value charts, Dr. Jacob's IRE would return an overall rating of 36%, just above the threshold to avoid modification to TPD status, whereas Dr. Gentilezza's rating of 32% would result in modification. R.R. at 124a.

Claimant testified at a March 10, 2020, hearing. R.R. at 194a. He has not been able to return to any kind of work since the injury, he uses a cane, and his condition has worsened. *Id*. at 202a. It interferes with his ability to walk, sleep, and think, and his sex life, and he has been suffering depression. *Id*. at 203a. He reviewed the PDQ he completed when he saw Dr. Jacob, on which he indicated that on a 1/10 scale, his pain interferes with his work on a 10/10 basis; interferes with his personal care ability on an 8-9/10 basis; interferes with his ability to travel on a 9-10/10 basis; interferes with his ability to sit and stand on a 9/10 basis; interferes with his ability to reach and grasp overhead on a 9-10/10 basis; interferes with his ability to bend, stoop, and squat on a 9-10/10 basis; requires daily pain medication (OxyContin) on a 10/10 basis; and requires him to see a doctor more than before his injury on a 10/10 basis. *Id*. at 204a-06a & 209a.

On November 4, 2020, the WCJ issued a decision and order granting Employer's modification petition and changing Claimant's benefit status from TTD to TPD. R.R. at 225a-31a. The WCJ credited Dr. Gentilezza's testimony over that of Dr. Jacob; the WCJ found Dr. Gentilezza's explanation of his methodology clear and well-reasoned, whereas Dr. Jacob's evaluation was hindered by his failure or inability to consider the 2006 MRI, which comparatively lessened the severity of Claimant's impairment due solely to his work-related injury. *Id*. at 229a. The WCJ also noted Dr. Jacob's inclusion of left leg conditions although these had not been accepted as compensable. *Id*. The WCJ therefore accepted as fact Dr. Gentilezza's impairment rating of 32%, which warranted modification to TPD. *Id*. The WCJ credited Claimant's testimony as to his condition, but noted that it did not address application of the AMA Guides through the IREs and did not impact the testimony of the expert doctors. *Id*.

Relevant to this appeal, when the WCJ set out the case background in the November 2020 decision, he made an apparent clerical error. It is undisputed that Claimant was injured on March 31, 2015, and began receiving weekly benefits of $951.00 on an uninterrupted basis. R.R. at 227a. Also, in the prior January 2018 decision, the WCJ described Claimant's injury as "L4-5 disc herniation, resolved to a disc disruption with chronic right L4 radiculopathy." *Id*. at 46a. However, in the November 2020 decision at Finding of Fact #6, the WCJ wrote the following sentence:

> Thereafter, on July 7, 2016, the parties agreed to a reinstatement of Claimant's indemnity benefits at the rate of $932.00 per week from January 29, 2015 and ongoing. The parties further agreed to expand the description of injury to include aggravation of pre-existing cervical disc pathology at C3-4 and status post cervical discectomy and fusion at C3-4.

7

*Id*. at 228a. This included an incorrect reference to reinstatement, an incorrect benefits rate, a date prior to Claimant's actual date of injury, and attribution of cervical issues, which are not part of Claimant's condition.

The Board affirmed, concluding that Claimant's July 2019 IRE was constitutionally legitimate and that the WCJ did not err in modifying Claimant's benefit status to TPD based on Dr. Gentilezza's IRE. R.R. at 250a-67a. The Board also modified the WCJ's decision to correct the clerical error by striking the above-quoted sentence and replacing it with the following sentence: "Claimant's work injury was expanded in a January 4, 2018, Decision and Order to include 'an L4-5 disc herniation, resolved to a disc disruption with chronic right L4 radiculopathy.'" *Id*. at 256a-58a & 267a. Claimant appealed to this Court.

## II. Discussion

Claimant raises three issues on appeal. He challenges Act 111, which governed his July 2019 IRE, as constitutionally infirm. He argues that the Board should have remanded the case to the WCJ to correct the apparent clerical error rather than doing so itself. Finally, he argues that the WCJ erred in accepting Dr. Gentilezza's 32% impairment rating, asserting that determination was not supported by substantial evidence.

### A. Constitutionality of Act 111

Beginning in 1996, former Section 306(a.2) of the Act[4] provided for impairment ratings based on the "most recent edition" of the AMA Guides. *Formerly* 77 P.S. § 511.2. Subsequently, in *Protz v. Workers' Compensation Appeal*

---

[4] Added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714.

8

*Board (Derry Area School District)*, 124 A.3d 406, 416-17 (Pa. Cmwlth. 2015) (*Protz I*), this Court concluded that former Section 306(a.2) constituted an unconstitutional delegation of legislative authority to a private entity (the AMA). On further appeal, our Supreme Court struck former Section 306(a.2) in its entirety in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 835-36 (Pa. 2017) (*Protz II*).

Thereafter, the General Assembly enacted Act 111, which replaced former Section 306(a.2) with Section 306(a.3), 77 P.S. § 511.3. Section 306(a.3) retains uncontroverted aspects of former Section 306(a.2) but has several key differences. Unlike the previous provision's reference to the "most recent edition" of the AMA Guides, Section 306(a.3) limits its application to the 6th edition of the AMA Guides. 77 P.S. § 511.3(1). Act 111 also reduces the threshold impairment rating for modification from 50% in former Section 306(a.2) to 35%, making it more difficult for employers to modify a claimant's benefit status from TTD to TPD. 77 P.S. § 511.3(2); *Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551, 562 (Pa. Cmwlth. 2020). Finally, Act 111 specifically grants employers credit for weeks of TTD or TPD benefits paid to a claimant prior to its effective date of October 24, 2018:

> (1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under section 306(a.3)(1) of the act, *an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph.* This section shall not be construed to alter the requirements of section 306(a.3) of the act.
>
> (2) For the purposes of determining the total number of weeks of partial disability compensation payable under

9

section 306(a.3)(7) of the act, *an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph*.

Act 111, § 3(1), (2) (emphasis added).

### i. Delegation of Legislative Authority in Act 111

Claimant first argues that Section 306(a.3) of Act 111 failed to cure the delegation defect of former Section 306(a.2) because IREs are still conducted pursuant to the AMA Guides, which are the product of the AMA, a private entity. Claimant's Br. at 13-17. Employer responds that Act 111 cured the defect due to its requirement that IREs must be conducted under the 6th edition of the AMA Guides as a stand-alone standard. Employer's Br. at 26-27. The WCJ did not address this issue and the Board noted that it lacks jurisdiction to rule on the constitutionality of the Act, which is its enabling legislation. R.R. at 254a-55a. However, Employer is correct as a matter of law.

In *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019) (*AFL-CIO*), we determined that Section 306(a.3) was not an unconstitutional delegation of legislative authority because its limitation to the 6th edition of the AMA Guides constituted adoption by the General Assembly of a particular set of standards already in existence at the time of adoption, compared with the delegation in former Section 306(a.2) to the "most recent edition" of the AMA Guides. *Id*. at 315-17. We concluded that the General Assembly properly exercised its legislative and policymaking authority in so doing and did not improperly delegate that authority on an unfettered, sight-unseen, or open-ended basis. *Id.* Since its issuance, *AFL-CIO* has been cited consistently for this holding. *See, e.g.*, *Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360,

10

366 (Pa. Cmwlth. 2021); *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1179 (Pa. Cmwlth. 2021).

Claimant's brief develops an argument based on the reasons our Supreme Court found former Section 306(a.2) to be an unconstitutional delegation of legislative authority in *Protz II*. However, Claimant fails to address the key difference between that provision and Section 306(a.3), specifically the limitation in the current provision to the 6th edition of the AMA Guides. Claimant also fails to address *AFL-CIO* and its progeny at all, much less present any legal argument or other basis why these cases were incorrectly decided or should not apply here. Because these cases are dispositive on this issue, Claimant's argument is meritless.

## ii. Act 111's Credit Provisions

Claimant next argues that Act 111's provisions granting credit to employers for benefits paid to claimants prior to Act 111's effective date violate claimants' constitutionally protected vested rights in the continuation of their benefits. *Id*. at 17-20. Employer responds that successful claimants gain a vested right to receive benefits, but that does not ensure a claimant's TTD status in perpetuity; therefore, Act 111's credit provisions are constitutionally sound. Employer's Br. at 28-32. The WCJ did not address this issue and the Board noted that it lacks jurisdiction to rule on the constitutionality of the Act, which is its enabling legislation. R.R. at 254a-55a. However, Employer is correct as a matter of law.

We have consistently held that applying Act 111's credit provisions to claimants whose injuries occurred prior to its effective date in October 2018 does not abrogate or substantially impair a claimant's vested rights in workers' compensation benefits because there is no vested right to ongoing TTD status. *See,*

11

*e.g.*, *Hutchinson*, 260 A.3d at 367; *Pierson*, 252 A.3d at 1179-80. In the recent case of *DiPaolo v. UPMC Magee Women's Hospital (Workers' Compensation Appeal Board)*, 278 A.3d 430 (Pa. Cmwlth. 2022), we explained the basis for this conclusion:

> [E]ven during the time when the previous IRE provisions had been invalidated by the *Protz* cases but before Act 111 became effective, employers were not devoid of a means to modify a claimant's benefit status. Section 413(a) of the Act, which has been part of our workers' compensation legislation since its beginning over 100 years ago, has always provided employers (as well as claimants) with the general ability to seek a change in benefits at any time based on "proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772. Section 306(b) of the Act, which also has roots in the early decades of workers' compensation law, specifically enables employers to modify a claimant's disability status from total to partial by showing that the claimant has regained some earning power. 77 P.S. § 512(2). Since the 1996 onset of more cost-efficient IREs, employers were less likely to challenge a claimant's status via litigation, but the option was always available. Thus, while it is true that "a claimant retains a certain right to benefits until such time as he is found to be ineligible for them," claimants do not acquire a vested right in total disability status at any given time because that status has always been subject to potential litigation by employers.

*Id*. at 435-36.

Claimant relies on cases pertaining to vested rights that have been presented to this Court in multiple challenges to our post-*Protz II* and Act 111 decisions. *See, e.g.*, *Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231 (Pa. 2008) (change in statutory law cannot retroactively extinguish a plaintiff's vested right in their cause of action); *Giant Eagle, Inc./OK Grocery Co. v. Workers' Comp.*

12

*Appeal Bd. (Weigand)*, 764 A.2d 663 (Pa. Cmwlth. 2000) (change in calculation of rate of compensation impacts a vested right and cannot be applied retroactively). However, Claimant fails to acknowledge the distinction between clearly protected rights in a cause of action or the rate of benefits and the mutability of benefit status. Claimant also fails to address *Hutchinson*, *Pierson*, and *DiPaolo* at all, much less present any legal argument or other basis why these cases (and multiple unpublished cases with the same analysis and disposition) were incorrectly decided or should not apply here. Because these cases are dispositive and binding authorities on this issue, Claimant's argument is meritless.

## B. Board's Amendment of WCJ Decision

Section 413 of the Act provides that a notice of compensation payable or an agreement for compensation may be modified to correct a material typographical, clerical, or factual error. 77 P.S. § 771. This has been judicially extended to allow correction of WCJ decisions, which may be done on a party's petition or *sua sponte* by either the WCJ or the Board. *Johnson v. Workers' Comp. Appeal Bd. (Budd Co.)*, 693 A.2d 1015, 1017-18 (Pa. Cmwlth. 1997) (holding that "an administrative agency may, on its own motion, correct typographical, clerical and mechanical errors, as well as undisputed factual errors and factual misconceptions, provided proper notice and explanation is given"); *see also Bentley v. Workers' Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 987 A.2d 1223, 1230 (Pa. Cmwlth. 2009) (holding that the Board may correct a "technical error" in WCJ decision); *Pritchett v. Workers' Comp. Appeal Bd. (Stout)*, 713 A.2d 1214, 1217 & n.3 (Pa. Cmwlth. 1998) (same).

13

In contrast, Section 413 does not apply where the alleged error involves a change in the WCJ's factual or legal analysis or requires additional factual findings or conclusions of law. *Varkey v. Workers' Comp. Appeal Bd. (Cardone Indus. & Fireman Fund)*, 827 A.2d 1267, 1273 (Pa. Cmwlth. 2003); *Butcher v. Workmen's Comp. Appeal Bd. (Treadway Resort Inn)*, 517 A.2d 1023, 1026 (Pa. Cmwlth. 1986).

Claimant acknowledges that the WCJ's sentence that stated Claimant sustained a cervical injury was an error, given that the accepted description of injury is lumbar in nature and nothing in the record supports a cervical issue. Claimant's Br. at 21. However, Claimant argues that the Board should have remanded the matter to the WCJ rather than fixing the error itself. *Id*. at 21-22. Employer responds that because the error was apparent, easily fixed, and there is no contention that the error was substantive or germane to the WCJ's ultimate decision to modify Claimant's status based on the IRE, remand was unnecessary. Employer's Br. at 32-35. The Board noted the error and its probable basis, determined the error was not material, and clearly explained its correction by striking the aberrant sentence and replacing it with the correct description of injury as agreed upon by the parties. R.R. at 257a-58a. We agree with Employer's position.

Here, the error in the WCJ's decision was obvious, apparently due to retention of a sentence from another decision (involving a cervical injury) that was used as a template for the decision in this case. The WCJ's listing of the description of injury was part of the case history; it was not the subject of dispute, not part of the ultimate disposition by the WCJ, and did not require additional fact-finding or analysis to correct. Pursuant to *Johnson*, *Bentley*, and *Pritchett*, the Board did not err in making the necessary correction rather than remanding to the WCJ. Therefore, Claimant's argument is meritless.

14

### C. Substantial Evidence in Support of Modification Based on IRE.

"Substantial evidence" is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). In performing a substantial evidence analysis, we view the evidence in a light most favorable to the party that prevailed before the WCJ. *Id.* In a substantial evidence analysis where both parties present evidence, it is immaterial that there is evidence in the record supporting a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence that supports the WCJ's factual finding. *Id.* Mere speculation or conjecture is insufficient to support a factual finding, but where there exists the ability to draw reasonable and logical inferences from evidence that is presented, including testimony, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion. *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

The WCJ is the factfinder, and it is solely for the WCJ to assess credibility and to resolve conflicts in the evidence. *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017). Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Id.* In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part. *Id.* In this regard, "[d]etermining the credibility of the witnesses is . . . not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893

A.2d 191, 195-96 (Pa. Cmwlth. 2006) (declining to "dissect and analyze each of the WCJ's reasons for his credibility determination"). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. *Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

### i. Inclusion in Record of PDQ from Dr. Gentilezza's IRE

Claimant argues that the PDQ Claimant completed at Dr. Gentilezza's IRE was improperly left out of the record and that the WCJ should have invalidated his IRE because the PDQ is mandatory and must be utilized. Claimant's Br. at 22. Employer responds that Dr. Gentilezza clearly had Claimant complete the PDQ and utilized it in his impairment calculations. Employer's Br. at 41-42. Employer adds that not only did Dr. Gentilezza testify about the PDQ from his IRE, but Dr. Jacob testified about it as well, and the Act does not require that the PDQ be formally entered into the record to be part of the overall IRE calculation. *Id.*

The WCJ noted but did not specifically address the discrepancy between the PDQs; however, the WCJ generally credited Dr. Gentilezza over Dr. Jacob, stating that Dr. Gentilezza "clearly identified the basis for his opinion while providing a well-reasoned explanation for how he arrived at that determination." R.R. at 229a. The Board agreed with Employer that it was not necessary to formally include the PDQ in the record because Dr. Gentilezza clearly used it and testified about it, and his testimony was generally credited by the WCJ. *Id.* at 265a-66a. Therefore, the Board concluded that Dr. Gentilezza's IRE constituted substantial evidence to support the WCJ's modification of Claimant's status to TPD. *Id.* We agree.

16

Claimant provides no authority to support his position that because the PDQ he completed for Dr. Gentilezza was not formally entered into the record, the IRE is invalid. There is no question that the PDQ existed and was part of Dr. Gentilezza's calculations. He discussed it in his IRE report, which was appended to his deposition transcript that was made an exhibit in this matter. R.R. at 89a. Moreover, he testified about it when he discussed Claimant's verbal report of pain: "he completed a [PDQ], which formalizes those findings with respect to pain and activities of daily living and he had a 119 as a score of the PDQ." *Id*. at 53a. Dr. Gentilezza explained that when he did the calculations for Claimant's IRE, the PDQ amounted to a Grade 3 modifier for that portion of the evaluation. *Id*. at 53a & 58a. Dr. Gentilezza also testified that if he had used Dr. Jacob's PDQ figure of 132, which would amount to a Grade 4 modifier, his overall impairment rating would rise only to 33%. *Id*. at 59a-60a & 62a. Moreover, Dr. Jacob testified about the Gentilezza PDQ in comparison to the one Claimant completed for him. *Id*. at 138a.

As noted, the WCJ is the factfinder, and it is solely for the WCJ to assess credibility and to resolve conflicts in the evidence, which the WCJ did here by explaining that Dr. Gentilezza was more credible overall than Dr. Jacob. *Hawbaker*, 159 A.3d at 69. Nor was the WCJ bound to specifically address the PDQs because "[d]etermining the credibility of the witnesses . . . is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey*, 893 A.2d at 195-96 (declining to "dissect and analyze each of the WCJ's reasons for his credibility determination"). Therefore, the WCJ did not err in crediting Dr. Gentilezza and accepting his IRE even though the PDQ was not formally included in the record, and the Board did not err in affirming.

17

**ii. Claimant's Lumbar Evaluation and Use of Table 17-5 in the AMA Guides**

Before and since *Protz II* and Act 111, claimants may contest the substantive results of an employer's IRE by presenting an IRE of their own. *See Brian Temme Tree Serv. v. Ecott (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 601 C.D. 2021, filed May 10, 2022), slip op. at 6-7, 2022 WL 1468351, at *3 (unreported) (addressing competing IREs in post-*Protz II* context).[5] In this context, each IRE is treated as medical evidence no different from any other medical evaluation. *Verizon Pa.*, 116 A.3d at 1163. The doctors who perform the IREs are subject to cross-examination and credibility determinations by the WCJ, including as to their methodology, application of the AMA Guides, and calculations. *Id*.

In *Commonwealth of Pennsylvania/DPW-Loysville Youth Center v. Workers' Compensation Appeal Board (Slessler)*, 103 A.3d 397 (Pa. Cmwlth. 2014) (*Slessler*), the claimant's treating doctor's impairment rating was 54%, which was sufficient to avoid modification under the previous IRE provisions in the Act, and the employer's doctor's impairment rating was 49%, which was sufficient for modification. *Id*. at 402. The employer's doctor critiqued the claimant's doctor's IRE methodology and calculations as inaccurate and based on a misunderstanding of how modifiers should be used. *Id*. The WCJ considered both experts' testimonies and found in the claimant's favor, which the Board affirmed. *Id*. at 403-04. We remanded for fact specific reasons not at issue here but noted that "any failure of a medical expert to apply pertinent guidelines would affect the credibility of such a witness rather than his competency." *Id*. at 405.

In *Verizon Pennsylvania*, also under the previous IRE provisions, the employer's IRE returned an impairment rating of 44%, while the claimant's IRE

---

[5] This Court's unreported memorandum opinions issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

returned a rating of 56%. 116 A.3d at 1160. The WCJ credited the claimant's doctor and denied the employer's modification petition, which the Board affirmed. *Id.* at 1161. We likewise affirmed, relying in part on *Slessler* and noting that when there are competing IREs, so long as the authoring doctors' testimony is competent, the WCJ is to evaluate the weight and credibility of the evidence and articulate objective reasons for accepting the testimony and IRE of one doctor over the other. *Id.* at 1163-64.

Here, Claimant argues that Dr. Gentilezza's IRE was defective and his testimony lacked competence because he applied grade modifiers to Claimant's evaluation in contravention of Table 17-5 of the AMA Guides, which Claimant characterizes as stating that "where there is a positive EMG study and an MRI showing disc injuries then the clinical studies and the grade modifiers do not apply." Claimant's Br. at 22-23. Employer denies any flaws in Dr. Gentilezza's methodology, notes that Dr. Jacob did not use Table 17-5 either, and asserts that there is a certain degree of subjectivity and judgment in IREs. Employer's Br. at 42-45. Employer adds that even if Dr. Gentilezza erred in his application of the AMA Guides, that went to the weight and not the competency of his testimony. *Id.*

As noted, the WCJ credited Dr. Gentilezza over Dr. Jacob. R.R. at 229a. In affirming, the Board noted that IREs entail judgment on the part of doctors and are therefore subject to variations and discrepancies in methodology and application. *Id.* at 263a. As the Board explained, the issue here was not Dr. Gentilezza's competence or the validity of his IRE, but disagreements between Dr. Gentilezza and Dr. Jacob on matters of medical judgment, which went to the weight and credibility of their testimonies. *Id.* at 263a-64a. The Board therefore concluded

19

that the WCJ's determination that Dr. Gentilezza's testimony warranted greater weight was not subject to disturbance on appeal. *Id.* We agree.

First, Claimant's assertion that Dr. Gentilezza's IRE is fatally flawed because he did not use Table 17-5 lacks merit. Claimant has presented no legal authority for this argument, nor is it supported by the record here. Dr. Gentilezza stated that Table 17-5 is an "overview" that is not used in the actual calculations as it is not "part of the formula to figure it out." R.R. at 63a. Dr. Jacob specifically stated that he had not used Table 17-5 either, characterizing it as "just a summary" that cannot be used. *Id.* at 140a. Table 17-5 is in the record as an exhibit to Dr. Jacob's deposition, titled "Adjustment Grid: Summary," and refers to more specific tables for the three components of a lumbar evaluation: functional history (PDQ), physical examination, and clinical studies. *Id.* at 183a. It also includes general characteristics of each grade modifier within those categories. Grade 0 indicates that, for example, based on the doctor's physical examination, the claimant has "no problem" and Grade 4 indicates that the claimant has a "very severe problem." *Id.* Table 17-5 does not say, as Claimant argues, that "where there is a positive EMG study and an MRI showing disc injuries[,] then the clinical studies and the grade modifiers do not apply." *See id.*; Claimant's Br. at 22-23. Given Table 17-5's title designation as a summary, its generality, both doctors' characterization of it as such, and their testimony that they had not specifically used it, Claimant's argument that Dr. Gentilezza's non-use of it invalidated his IRE is meritless.

However, setting aside Table 17-5, Claimant's argument may also be read as seeking to disqualify Dr. Gentilezza's IRE and testimony because he used grade modifiers based on Claimant's diagnostic tests in his calculations when

20

according to Claimant, those tests should have been limited in their application to the diagnosis portion of the IRE. *See* Claimant's Br. at 22-23. We disagree.

Dr. Gentilezza recounted his methodology in detail, with references to specific aspects of the AMA Guides' chapter on lumbar evaluations. R.R. at 58a-63a. He explained why he had assigned certain grade modifiers differently from Dr. Jacob. *Id*. at 58a. Relevant to Claimant's argument, Dr. Gentilezza explained that he did not include Claimant's EMG in determining his grade modifier evaluation in the medical records category because he had already used it in the diagnosis phase of the IRE, but included the MRI because it was relevant in its category and consistent with his exam results. *Id*. at 58a-59a.

Dr. Jacob, by contrast, was adamant that the IRE evaluator can never "double-dip" and use diagnostic tests for both diagnosis and calculation. *Id*. at 149a-56a. However, as set forth above, Dr. Gentilezza stated that he had used the EMG for diagnostic purposes and the MRI as part of his determination of which grade modifier to apply in the medical records category. This did not amount to "double-dipping." Moreover, Dr. Jacob could not point to this directive in the AMA Guides and also acknowledged that the AMA Guides are not "perfect science" in terms of creating a qualitative figure and that some interpretation by the IRE doctor is needed. *Id*. at 145a & 156a-57a.

Considering the foregoing, this case is analogous to *Slessler* and *Verizon Pennsylvania*, in that the differences of opinions between the two IRE doctors, both in their conclusions and in their methodologies, are questions of medical judgment. These went to the weight and credibility of their testimonies, the evaluation of which was reserved to the WCJ and cannot be disturbed on appeal. The WCJ's acceptance of Dr. Gentilezza's testimony over that of Dr. Jacob was

21

supported by substantial evidence, particularly Dr. Gentilezza's detailed explanation of his approach, reasoning, and conclusions. Claimant has not shown that the WCJ's crediting of Dr. Gentilezza was unsupported or amounted to arbitrary or capricious disregard of evidence. Therefore, the Board did not err in affirming the WCJ, and Claimant's argument in this regard is meritless.

### iii. Claimant's Lumbar Evaluation and Inclusion of Left Leg Symptoms

In *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*), our Supreme Court noted that, pursuant to the Act, the IRE physician-evaluator bears the "obligation to determine the degree of impairment due to the compensable injury." *Id*. at 989. (citing 77 P.S. § 511.2(1)). The required evaluation is of "the percentage of permanent impairment of the whole body resulting from the compensable injury." *Id*. (citing 77 P.S. § 511.2(8)(ii)). In doing so, "a physician-evaluator simply may not entirely disavow any and all responsibility to consider causality relative to a given condition." *Id*. The Court stated:

> We have no difference with the Commonwealth Court's reasonable holding that a notice of compensation payable should define "compensable injury" for purposes of this inquiry. Such recognition, however, simply does not determine the range of impairments which may be "due to" such injury. Under [the Act] and the applicable impairment guidelines, the physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment. [*Accord* AMA Guides] ("Physicians must use their clinical knowledge, skills, and abilities to arrive at a specific diagnosis; define the pathology; and rate impairments based on the AMA Guides' criteria.").

*Id*. The Court later reiterated this point: "In all events, the evaluative judgment is the touchstone on these subjects, as well as on the topic of causality." *Id*. at 991.

22

The examiner's "discernment cannot be withheld on the basis that the physician-examiner believes the undertaking is a more limited one," such as the non-inclusion in a notice of compensation payable of a condition that is present at the IRE and may be causally related to the work injury. *Id*. at 996.

In *Sicilia v. API Roofers Advantage Program (Workers' Compensation Appeal Board)*, 277 A.3d 1213 (Pa. Cmwlth. 2022), this Court clarified that even if a description of injury has been formally adjudicated in previous WCJ decisions, those decisions do not have preclusive effect on the IRE evaluator, noting that our IRE scheme "places a great deal of discretion in the physician-evaluator to determine what diagnoses are 'due to' a work-related injury," at least in part because a description of injury can be modified at any time. *Id*. at 1218 & n.6.[6]

Claimant asserts that because Dr. Gentilezza detected left leg issues during the IRE, he was bound to include those in his impairment rating even though left leg conditions were not part of Claimant's accepted and adjudicated description of injury. Claimant's Br. at 23-24. Employer responds that left leg conditions were not part of the recognized work injury; therefore, Dr. Gentilezza did not err in omitting them from his IRE calculations. Employer's Br. at 45-46. The WCJ's explanation for why he discredited Dr. Jacob's testimony included his inclusion of left leg issues, which the WCJ noted had not been "accepted as compensable." R.R. at 229a. The Board concluded that the WCJ had not erred in this aspect of his credibility determinations, which cannot be second-guessed. R.R. at 264 n.13.

---

[6] *Sicilia* remains precedential as of this decision, but has been accepted for review by our Supreme Court to determine whether this Court "impermissibly expand[ed] the holdings in [*Duffey II*] . . . as to usurp the authority of the [WCJ] to determine the nature and extent of the compensable injury?" *Sicilia v. API Roofers Advantage Program (Workers. Comp. Appeal Bd.)* (Pa., No. 287 MAL 2022, filed Feb. 15, 2023), 2023 WL 2008352.

Although the WCJ's credibility determinations are generally shielded from appellate disturbance, pursuant to *Duffey II* and confirmed in *Sicilia*, the doctor conducting an IRE must consider all conditions he or she detects that may be causally related to the work injury. Here, Dr. Gentilezza properly considered Claimant's left leg issues as they pertained to the work injury. In his recitation of Claimant's history, Dr. Gentilezza noted that Claimant had reported left leg pain to one of his treating doctors in April 2017. R.R. at 52a & 56a. Claimant also reported left leg numbness and tingling to Dr. Gentilezza at the IRE and Dr. Gentilezza recorded left leg symptoms and weakness on his general clinical examination. *Id*. at 53a-54a & 61a.

However, Dr. Gentilezza concluded that Claimant's left leg symptoms were not consistent with or causally related to his work injury. R.R. at 57a & 63a. This was in part because Claimant's 2017 EMG showed only right-sided radiculopathy; Dr. Gentilezza described that EMG as clear, obvious, not equivocal, and objective as compared with Claimant's reported left leg symptoms to him and as noted in Claimant's records. *Id*. at 56a, 87a & 93a. Dr. Gentilezza acknowledged that if Claimant had been limping to favor his right leg due to the injury, left leg issues could develop due to the compensatory pressure on that limb. *Id*. at 61a. However, that condition would not necessarily warrant inclusion in the IRE calculus as a separate "impairment" or condition requiring additional points. *Id*.

Dr. Jacob noted the 2017 EMG showing only right-sided radiculopathy[7] and acknowledged that none of the previous WCJ decisions or medical records attributed any left leg issues to the work injury. R.R. at 111a & 130a-32a. Like Dr. Gentilezza, Dr. Jacob detected left leg issues when examining Claimant. *Id*. at 120a-

_____

[7] Dr. Jacob stated that the test was from July 2017, but his report confirms that it was the same January 2017 EMG study that Dr. Gentilezza considered. R.R. at 176a.

24

21a, 129a & 134a. Unlike Dr. Gentilezza, however, Dr. Jacob attributed these conditions to the impairment Claimant sustained from the work injury. *Id*. at 121a. Whereas Dr. Gentilezza relied on the lack of EMG evidence to exclude left leg issues from his IRE conclusions, Dr. Jacob believed that an EMG is "only part of the diagnosis." *Id*. at 133a-37a. Nonetheless, Dr. Jacob subsequently acknowledged that his ultimate impairment rating would not have changed whether or not Claimant presented with left leg issues:

> Q: [L]et's just assume for purposes of my question that [Claimant] doesn't have left lower extremity symptoms, would that change the rating of his whole body impairment?
>
> A: No.
>
> Q: The impairment is the same, is that true?
>
> A: That's correct.

*Id*. at 151a. This indicates that Claimant's left leg issues were not definitive in Dr. Jacob's calculations. Moreover, it reinforces that although IREs aim to quantify a claimant's impairment, the resulting rating depends in large part on the medical judgment of the doctor conducting the evaluation. *See Duffey II*, 152 A.3d at 989-91. Dr. Gentilezza declined to include left leg issues in his clinical examination calculations, resulting in a Grade 2 modifier, because they were not confirmed by an EMG and he did not view them as a distinct component of Claimant's impairment. R.R. at 56a-57a. Thus, although Dr. Gentilezza ultimately did not include Claimant's left leg issues, he clearly fulfilled his obligation to consider them in his report and in his deposition. Dr. Jacob included them in that part of his clinical exam calculations, resulting in a Grade 3 modifier, because he gave Claimant's EMG

25

results less emphasis than his own examination findings; he admitted, however, that their inclusion did not affect his final rating.

It follows that Claimant's left leg issues were not relevant to the doctors' respective ultimate ratings, which at any rate embodied their individual exercises of medical judgment. Although the WCJ may have erred in relying on the non-compensability of Claimant's left leg issues as a basis for finding Dr. Jacob's testimony less credible, that was not the only basis for his credibility determination. Any error was therefore harmless and the Board did not err in affirming.

## III. Conclusion

Claimant has not established that his IRE was unconstitutional or that the Board should not have corrected the WCJ's error in describing Claimant's diagnosis. Claimant also has not established that Dr. Gentilezza's IRE was defective or that his testimony concerning his IRE was incompetent. As such, it was for the WCJ to evaluate and weigh the evidence and credit Dr. Gentilezza over Dr. Jacob, which the WCJ specified was based on Dr. Gentilezza's detailed explanation of his approach, reasoning, and conclusions. Claimant has not shown that the WCJ's crediting of Dr. Gentilezza was unsupported by substantial evidence or amounted to arbitrary or capricious disregard of evidence, therefore the Board did not err in affirming the WCJ in granting Employer's modification petition. We affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jay T. Tedesco,
                 Petitioner

        v.

Kane Freight Lines, Inc. (Workers'
Compensation Appeal Board),
                 Respondent

No. 1270 C.D. 2021

# O R D E R

AND NOW, this 19th day of May, 2023, the October 21, 2021, order of the Board, which affirmed the Workers' Compensation Judge's November 4, 2020, order to modify Jay T. Tedesco's benefits status from total temporary disability to total partial disability, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge